RECEIVED BY MAIL
JUN 21 2010
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RICHARD A. O'DONNELL,
PEQUOT OD, LLC, et al.

Plaintiff(s),

vs.

LAKES STATE BANKS,
JOHN "JP" ELSENPETER, et al.

Defendant(s).

Case No. 10CV 2523 RHK/RLE
(To be assigned by Clerk of District Court)

DEMAND FOR JURY TRIAL

YES ☒    NO ☐

(Enter the full name(s) of ALL defendants in this lawsuit. Please attach additional sheets > SHEETS ATTACHED
if necessary).

## COMPLAINT

PARTIES

1. List your name, address and telephone number. Do the same for any additional plaintiffs. (ONE ADD'L PAGE)

   a. Plaintiff

   Name  RICHARD A. O'DONNELL

   Street Address  1838 MT. BAKER HWY.

   County, City  WHATCOM, BELLINGHAM

   State & Zip Code  WASHINGTON 98226

   Telephone Number  (360) 393-0269

SCANNED
JUN 21 2010
U.S. DISTRICT COURT ST. PAUL


COMPLAINT

PARTIES:

1.

  b. <u>PLAINTIFF</u>

NAME: PEQUOT OD, LLC

1838 MT. BAKER HWY.
WHATCOM, BELLINGHAM
WASHINGTON, 98226

(360) 393-0264

2. List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption.

   a. Defendant No. 1

   Name **LAKES STATE BANK**

   Street Address **30886 SECOND ST.**

   County, City **CROW WING, PEQUOT LAKES**

   State & Zip Code **MINNESOTA 56472**

   b. Defendant No. 2

   Name **LAKES STATE BANK**

   Street Address **35197 COUNTY ROAD #3**

   County, City **CROW WING, CROSSLAKE**

   State & Zip Code **MINNESOTA 56442**

   c. Defendant No. 3

   Name **DAVID ELSENPETER, PRES.**

   Street Address **LAKES STATE BANK 30886 SECOND ST.**

   County, City **CROW WING, PEQUOT LAKES**

   State & Zip Code **MINNESOTA 56472**

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES, ADDRESSES ON A SEPARATE SHEET OF PAPER.
Check here if additional sheets of paper are attached:** ☒ (2 ADD'L PAGES)
**Please label the attached sheets of paper to correspond to the appropriate numbered paragraph above (e.g. Additional Defendants 2.d., 2.e., etc.)**

2

DEFENDANT(S) CON'T

d. DEFENDANT NO. 4

JOHN "JP" ELSENPETER, EXC. V/P
LAKES STATE BANK
35197 COUNTY ROAD #3
CROW WING, CROSSLAKE
MINNESOTA, 56442

e. DEFENDANT NO. 5

JOHN C. ELSENPETER
5277 CHOKECHERRY TRAIL N.W.
CASS, HACKENSACK
MINNESOTA, 56452

f. DEFENDANT NO. 6

GILROY G. ARVIG
36599 ABC DRIVE
CROW WING, CROSSLAKE
MINNESOTA, 56442

g. DEFENDANT NO. 7

ROGER SCHWIETER
37249 SILVER PEAK ROAD
CROW WING, CROSSLAKE
MINNESOTA, 56442

DEFENDANT(S) CON'T

h. DEFENDANT NO. 8

RICHARD TIEDEMAN
LAKES STATE BANK
30886 SECOND ST.
CROW WING  PEQUOT LAKES
MINNESOTA 56472  *

* "BACK-UP" ADDRESS
31113 FRONT STREET
PEQUOT LAKES, MN 56472

JURISDICTION

Federal courts are courts of limited jurisdiction. Generally, two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount of damages is more than $75,000 is a diversity of citizenship case.

3. What is the basis for federal court jurisdiction? *(check all that apply)*

   ☐ Federal Question   ☒ Diversity of Citizenship

4. If the basis for jurisdiction is Federal Question, which Federal Constitutional, statutory or treaty right is at issue? If more than one, list each.

   N/A

5. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party? Each Plaintiff must be diverse from each Defendant for diversity jurisdiction.

   Plaintiff Name: RICHARD O'DONNELL et al   State of Citizenship: WASHINGTON

   Defendant No. 1: LAKES STATE BANK   State of Citizenship: MINNESOTA

   Defendant No. 2: LAKES STATE BANK   State of Citizenship: MINNESOTA

   **Attach additional sheets of paper as necessary and label this information as paragraph 5.**
   **Check here if additional sheets of paper are attached.** ☒ (ONE ADD'L PAGE)

6. What is the basis for venue in the District of Minnesota? *(check all that apply)*

   ☐ Defendant(s) reside in Minnesota   ☒ Facts alleged below primarily occurred in Minnesota
   ☐ Other: explain

STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim. The description of facts should include a specific explanation of how, where, and when each of the defendants named in

3

#5, CON'T.. "JURISDICTION IS DIVERSITY OF CITIZENSHIP."

STATE OF CITIZENSHIP

DEFENDANT #3: DAVID ELSENPETER — MINNESOTA

DEFENDANT #4: JOHN "JP" ELSENPETER — MINNESOTA

DEFENDANT #5: JOHN C. ELSENPETER — MINNESOTA

DEFENDANT #6: GILROY G. ARVIG — MINNESOTA

DEFENDANT #7: ROGER SCHWIETER — MINNESOTA

DEFENDANT #8: RICHARD TIEDEMAN — MINNESOTA

the caption violated the law, and how you were harmed. Each paragraph must be numbered separately, beginning with number 7. Please write each single set of circumstances in a separately numbered paragraph.

7.

> PLS. SEE ATTACHED FIVE(5) PAGES TYPEWRITTEN COMPLAINT AND ATTACHED EXHIBITS THERETO

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached:** ☒
**Please label the attached sheets of paper to as Additional Facts and continue to number the paragraphs consecutively.**

REQUEST FOR RELIEF

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking.

WHEREFORE, Plaintiff Richard O'Donnell (et al) demands:

1. $346,000.00 actual damages.

2. $1,038,000.00 for mental anguish.

3. Punitive damages as to be determined by jury.



Signed this 16TH day of JUNE, 2010

Signature of Plaintiff _____ et al.
RICHARD A. O'DONNELL

Mailing Address 1838 MT. BAKER HWY
BELLINGHAM, WA 98226

Telephone Number (360) 393-0269

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number. Attach additional sheets of paper as necessary.

PEQUOT OD, LLC
BY _____/MEMBER
1838 MT. BAKER HWY
BELLINGHAM, WA 98226
(360) 393-0269

ATTACHMENTS
#'s 7 THRU 38 "COMPLAINT"
AND EXHIBITS "A" THRU "U"
AND WITNESS LIST

5

7.  In June of 2007, Defendant J.P. Elsenpeter approached Plaintiff Richard O'Donnell (who was a Customer of Lakes State Banks at the time) and said that another bank customer could not pay his commercial bank loan on a four-suite office building (located @ 30176 Old Highway #371, Pequot Lakes, Minnesota). Defendant J.P. Elsenpeter stated to Plaintiff Richard O'Donnell, "that I (J.P.) do not want to foreclose on [the] building at this time (June 2007) as I've enough loan problems as it is...the other bank customer (Mr. Phillip Schott) doesn't want to, but I (Defendant J.P. Elsenpeter) can get Mr. Schott to Quit-Claim the building to you"(Plaintiff Richard O'Donnell).

8.  At the time the offer of the building was made to Plaintiff Richard O'Donnell, he (Richard O'Donnell) inquired as to the downside of accepting the building and a new loan against it and was advised by Defendant J.P. Elsenpeter, "that the reason the building was in trouble was the fact that Phillip Schott (owner of the building) had never found tenants. But the bank (Lakes State Banks) and Defendant J.P. Elsenpeter and J.P.'s brother, Defendant David Elsenpeter (President of the banks) would and could find Plaintiff Richard O'Donnell tenants for the building. And also, that Phillip Schott would lease back a suite for a period of three (3) years."

9.  The sale/purchase of the building by Plaintiff Richard O'Donnell occurred on or about June 22, 2007. For a sale price of $293,575.00. Attached hereto as Exhibit "A".

10. Defendant Lakes State Banks provided a loan to Plaintiff's Richard O'Donnell and Pequot OD, LLC. et al, in the amount of $303,700.00 along with a real estate Mortgage and a Warranty Deed. Attached hereto as Exhibits "B, C".

11. The former owner of the building, Phillip Schott, did enter into a lease agreement with Plaintiff Richard O'Donnell (Pequot OD, LLC. et al.) in June, 2007 for a period of three (3) years with a monthly rental fee of $1,070.00. However, Mr. Schott broke the lease and moved out of the building on or about august 2007. Attached hereto as Exhibits "D".

12. Defendant J.P. Elsenpeter continually, over a many, many month period, 'told' Plaintiff Richard O'Donnell, "We'll find you tenants for 'the' building." Defendant J.P. Elsenpeter /Lakes State Banks never provided Plaintiff Richard O'Donnell with any tenants.

13. In January of 2008 (or thereabouts) Defendant J.P. Elsenpeter asked Plaintiff Richard O'Donnell to apply to the city of Pequot Lakes (Minnesota) to rezone (subdivide) the 'lot' surrounding the building into two (2) lots, so that one (1) lot could be sold separately. Plaintiff Richard O'Donnell had the necessary surveying and legal work completed and the city of Pequot Lakes approved of the split-off lot at a cost to Plaintiff Richard O'Donnell of approximately $1,200.00 Attached hereto as Exhibits "E" and "F".

14. Upon completion of the 'spin-off' lot, Plaintiff Richard O'Donnell listed the lot for sale with a local realtor at a sale price of $38,500.00. Attached hereto Exhibit "G".

15. In August 2008, Defendant J.P. Elsenpeter told Plaintiff Richard O'Donnell that "some friends of the bank" would buy the lot. When the sale of the lot was consummated, Defendant JP Elsenpeter also told Plaintiff Richard O'Donnell "the buyer(s) are just some guys I (JP) know around town." The purchased priced offered was $31,500.00. Defendant J.P. Elsenpeter told Plaintiff Richard O'Donnell that "I couldn't get 'them' to go any higher in price, but we really do not have any choice but to accept 'their offer!" Attached hereto as Exhibit "H".

16. It was a cash sale. There was no formal closing. The buyer(s) (Chuck and John Holdings, Inc), the seller (Plaintiff Richard O'Donnell/Pequot OD, LLC et al.) and the Defendants Lakes State Banks et al., all just signed the sale documents over a two or three day period at the title company. The closing sheet/settlement statement dated September 2008 indicates closing costs of $19,345.07 (including $16,556.00 of property taxes paid to the county) and a check payable to Defendant Lakes State Bank and Plaintiff Richard O'Donnell in the amount of $12,238.79. Attached hereto Exhibit "I".

17. When Plaintiff Richard O'Donnell went to the Defendant, Lakes State Bank, Defendant J.P. Elsenpeter told Plaintiff Richard O'Donnell that the $12,378.89 from the lot sale proceeds was applied to the building loan, but the Defendant J.P. Elsenpeter was still short of money to close the loan. Defendant J.P. Elsenpeter then increased Plaintiff Richard O'Donnell's loan on the building from $303,700.00 to $318,000.00 (an increase of $14,700.00) and Defendant J.P. Elsenpeter also created a personal loan to Plaintiff Richard O'Donnell in the amount of $10,050.00. Of the personal loan funds, Defendant J.P. Elsenpeter used $6,345.92 to make three monthly payments on the new $318,000.00 loan. The difference in proceeds between the $10,050.00 loan and the $6,345.92 was given to Plaintiff Richard O'Donnell. Attached hereto Exhibit "J, K, L".

18. At the time of the above lot sale transaction, Plaintiff Richard O'Donnell stated to Defendant J.P. Elsenpeter that using a camper van that Plaintiff Richard O'Donnell owned as collateral (for the $10,050.00 personal loan) was what Plaintiff Richard O'Donnell had asked Defendant J.P. Elsenpeter not to do. The camper van was jointly owned with someone else not associated with the building. Defendant J.P. Elsenpeter replied that he had no choice as he (Defendant J.P. Elsenpeter) had to have collateral to make the loan of $10,050.00 to Plaintiff Richard O'Donnell in order to close the lot sale and to give Plaintiff Richard O'Donnell the remaining $3,604.08 as personal proceeds.

19. Plaintiff Richard O'Donnell realized that the $3,604.08 personal loan was an inducement to sign all the loan papers as Plaintiff Richard O'Donnell was in need of some cash, so he (Plaintiff Richard O'Donnell) reluctantly signed the papers. To this day it has never been made clear to Plaintiff Richard O'Donnell

exactly what happened to all the sale proceeds; $31,500.00 land sale, $6,345.92 personal loan (supposedly paid to the new loan), plus the increase in the building loan of $14,300.00 for a total of $52,146.92. Attached hereto Exhibit "K, L".

20. Within days of the lot closing, Defendant J.P. Elsenpeter advised Plaintiff Richard O'Donnell that he (Defendant J.P. Elsenpeter) "had worked a lease deal with the buyers" to build him (Defendant J.P. Elsenpeter) a storage building on the lot to store his boat, snowmobiles and other personal property.

21. While the storage building was being constructed Plaintiff Richard O'Donnell once again asked Defendant J.P. Elsenpeter how Plaintiff Richard O'Donnell could sell a lot for $31,500.00 and come up $21,045.00 short to close the deal? His (Defendant J.P. Elsenpeter) reply was "It'll work out, we'll find some tenants or sell the building."

22. Within a short period of time after the storage building was built, Defendant J.P. Elsenpeter asked Plaintiff Richard O'Donnell if he would consider having the city of Pequot Lakes rezone the building into a (CIC) common interest community (office suites that could be sold as individual units.) Plaintiff Richard O'Donnell said he would look in to the feasibility and cost for that type of zoning.

23. A few days later, Plaintiff Richard O'Donnell explained to Defendant J.P. Elsenpeter that the CIC zoning was possible but expensive, approximately $6-7,000.00. Including attorney fees of approximately $2,500, surveyor fee of approximately $2,500.00 and the city of Pequot Lakes fees of $1,500-$2,000.00. Plaintiff Richard O'Donnell told Defendant J.P. Elsenpeter that he could not afford to spend that amount of money for the CIC zoning. Defendant J.P. Elsenpeter replied that "we've really no choice and I (JP Elsenpeter) will cover the cost personally." The rezoning, surveying and legal work was completed on or about June 18, 2009.

24. Defendant J.P. Elsenpeter personally paid out of pocket (or from Bank proceeds) all costs related to the CIC rezoning (Approximately $6,000.00-$7,000.00). Defendant J.P. Elsenpeter repeatedly requested of Plaintiff Richard O'Donnell not to disclose to Defendant J.P. Elsenpeter's brother, Defendant David Elsenpeter that he (Defendant J.P. Elsenpeter) was personally paying for the CIC rezoning. Plaintiff Richard O'Donnell has never understood why Defendant J.P. Elsenpeter paid the CIC rezoning costs and who, if anyone within the bank approved of said disbursements. Attached hereto Exhibits "M, N, O".

25. On or about July 14, 2009, Plaintiff Richard O'Donnell delivered a hand printed letter to JP Elsenpeter outlining his displeasure with the overall situation; the building, the loans and the rezoning. Defendant J.P. Elsenpeter's only comment

was "it slams me (Defendant J.P. Elsenpeter) pretty good." Attached hereto Exhibit "P"

26. In the fall of 2008 (September or October) Minnesota State Bank examiners were at the Lakes State Bank and "classified" all of Plaintiff Richard O'Donnell's loans (four personal loans and two buildings loans) so that from that time forward Plaintiff Richard O'Donnell could no longer increase his loans or change them around or to do what would have been necessary to keep his financial situation stable.

27. It is important to note that at the time of the Bank Examiner's loan "classification" that Defendant J.P. Elsenpeter readily admitted to Plaintiff Richard O'Donnell that his loans would not have been "classified" if not for the building loan debacle as herein outlined.

28. In September 2009, Defendant J.P. Elsenpeter and Defendant David Elsenpeter proposed to Plaintiff Richard O'Donnell the he (Plaintiff Richard O'Donnell) sell the building to KCB Investments, LLC for the sum of $242,500.00 ($76,000.000 less than the outstanding loan against the building). Defendant J.P. Elsenpeter and Defendant David Elsenpeter asked that Plaintiff Richard O'Donnell sign a note payable to Lakes State Bank in the amount of $75,000.00 with twenty three monthly payments of $934.70 and a lump sum payment to the bank of $65,597.36 due on September 8, 2011. Plaintiff Richard O'Donnell advised Defendant J.P. Elsenpeter that he (Plaintiff Richard O'Donnell) could not make the payments, let alone pay the principle sum of $65,597.36. Plaintiff Richard O'Donnell was advised by Defendant J.P. Elsenpeter that "we will just get a judgment against you". Plaintiff Richard O'Donnell then signed the purchase agreement and the note with the bank. Plaintiff Richard O'Donnell backed out of the deal the next day. Attached hereto Exhibit "Q, R".

29. In September of 2009, Plaintiff Richard O'Donnell received several notices of the banks intent to foreclose on his properties. To stave off the foreclosures Plaintiff Richard O'Donnell declared a chapter #7 bankruptcy, filed on September 18, 2009 and adjudicated on December 23, 2009. Plaintiff Richard O'Donnell's only creditors were Lakes State Bank and three credit cards. Attached hereto Exhibit "T".

30. Subsequent to Plaintiff Richard O'Donnell's bankruptcy adjudication, Defendant J.P. Elsenpeter illegally withdrew $1,950.00 of personal funds out of Defendant Richard O'Donnell's personal bank account. Defendant J.P. Elsenpeter said he would not give the $1,950.00 back to Plaintiff Richard O'Donnell until Plaintiff Richard O'Donnell gave his automobile to the bank. An automobile the bank had up to that time, never specifically requested.

31. In January 2010, Plaintiff Richard O'Donnell "quit-claim-deeded" the building discussed herein (in a show of good faith) to the bank to save Lakes State Bank the time and cost of foreclosure. Attached hereto Exhibit "U".

32. In early April 2010 Plaintiff Richard O'Donnell did some on line research and discovered that Chuck & John Holding, Inc is a South Dakota Corporation with Defendant J.P. Elsenpeter as one of the original incorporators. (November 7, 2005) At various times since inception, Defendant J.P. Elsenpeter has been the President, Treasurer and or Vice President of Chuck & John Holdings Inc. As recent as January 13, 2010, Defendant J.P. Elsenpeter is listed as the President of said corporation. Attached hereto Exhibits "V" "W" "X" "Y".

33. Chuck & John Holdings Inc is the corporation that purchased the land from Plaintiff Richard O'Donnell. Exhibit "H". Defendant J.P. Elsenpeter never disclosed to Plaintiff Richard O'Donnell that he (Defendant J.P. Elsenpeter) was buying the lot for himself through Chuck & John Holdings Inc.

34. Defendant J.P. Elsenpeter increased Plaintiff Richard O'Donnell's indebtedness to the bank for his (Defendant J.P. Elsenpeter's) sole and personal gain by committing fraud against Plaintiff Richard O'Donnell in the transactions with the Plaintiff Richard O'Donnell.

35. The Senior Officer's, the Board of Directors and or Stockholders (many, one in the same) of Lakes State Bank, did know or should have known of Defendant J.P. Elsenpeter's loans to Plaintiff Richard O'Donnell, loans all for Defendant J.P. Elsenpeter's personal benefit and self-interest.

36. If any of the Officers and or Director's of The Lakes State Banks were aware of Defendant J.P. Elsenpeter's ownership of/in Chuck & John Holding Inc, it was their responsibility to disclose that information to Plaintiff Richard O'Donnell.

37. The Lakes State Bank, its Senior Officer's and its Board of Directors have failed in their fiduciary responsibilities to Plaintiff Richard O'Donnell and as such, are just as culpable in the fraudulent loans as Defendant J.P. Elsenpeter.

38. Plaintiff Richard O'Donnell has suffered irreparable harm to his reputation, has suffered irreconcilable financial ruin and has and continues to suffer severe mental anguish as a direct result of the fraudulent actions by Lakes State Banks and in particular of and by Defendant J.P. Elsenpeter.

WHEREFORE, Plaintiff Richard O'Donnell (et al) demands:

1. $346,000.00 actual damages.

2. $1,038,000.00 for mental anguish.

3. Punitive damages as to be determined by jury.

# WITNESS LIST

**PLAINTIFF(S):** RICHARD A. O'DONNELL, et al.

vs

**DEFENDANT(S):** LAKES STATE BANK, et al.

1) DAVID ELSENPETER
2) JOHN "JP" ELSENPETER
3) JOHN C. ELSENPETER
4) GILROY G. ARVIG
5) ROGER SCHWIETERS
6) RICHARD TIEDEMAN
7) BRAD AKRE
8) PHILLIP SHOTT
9) STACY CUMMINGS
10) DAWN BITTNER
11) PATRICK TROHTER
12) THEODORE 'TED' PEDERSEN
13) PAUL SANDLIN
14) CHERYL BOOZELL
15) PATRICK TROHTER
16) CHARLES LANE
17) MICHAEL ELSENPETER
18) JOHN DOE, ET AL.