UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHARD A. O'DONNELL, | Civil No. 10-CV-2523 (MJD/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| LAKES STATE BANK, DAVID ELSENPETER, JOHN "J.P." ELSENPETER, JOHN C. ELSENPETER, GILROY G. ARVIG, ROGER SCHWEITER, AND RICHARD TIEDEMAN | |
| Defendants, | |

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendants for Summary Judgment and upon the Motion of the Plaintiff for Summary Judgment. A hearing on the Motion was conducted on February 9, 2012. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons outlined below, the Court recommends that the Defendants' Motion for Summary Judgment be GRANTED and the Plaintiff's Motion for Summary Judgment be DENIED.

**I.   BACKGROUND**

The Plaintiff seeks damages for alleged fraudulent activities on the part of the Defendants Lakes State Bank ("the Bank"), David Elsenpeter (Bank President), John "J.P." Elsenpeter (Bank Executive VP), John C. Elsenpeter, Gilroy G. Arvig, Roger Schwieter, and Richard Tiedeman involving various loan transactions concerning a commercial property sold to the Plaintiff's company Pequot OD.

1

Plaintiff's Complaint sets forth a detailed history of his alleged involvement in loans obtained from the Defendants.  Since Plaintiff proceeds in this matter pro se, his allegations are set forth below at length, but as will be discussed in more detail in this Report and Recommendation, the material allegations of the Complaint are limited to a claim of fraud arising out of a single land sale transaction.

In June 2007, Defendant J.P. Elsenpeter approached Plaintiff regarding a commercial building in Pequot Lakes, Minnesota and suggested that he could get the building owner, Phillip Schott ("Schott") to quit claim the building to Plaintiff.  (Am. Comp. [Docket No. 11], ¶ 7).  Plaintiff further contends that J.P. Elsenpeter told Plaintiff that the reason the building was in trouble was because Schott could not find tenants, but that J.P. Elsenpeter and his brother Defendant David Elsenpeter would find tenants for the building and that Schott would lease back a suite for 3 years.  (Am. Compl. ¶ 8).

Plaintiff bought the building on June 22, 2007 for $293,575.00.   (Am. Compl. ¶ 9; Am. Compl. Ex. A).  To purchase the property, Plaintiff obtained a loan from Defendant Lakes State Bank for $303,700.00.  (Am. Compl. ¶ 10, Am. Compl. Ex. B "Real Estate Mortgage").  Schott entered into a lease in June 2007 for three years, but broke the lease in August 2007.  (Am. Compl. ¶ 11; Am. Compl. Ex. D "Commercial Lease").  According to the Plaintiff, Defendant J.P. Elsenpeter continued to advise Plaintiff that he and Lakes State Bank would find tenants for Plaintiff's building, but they never did.  (Compl. ¶ 12).

Then, in January 2008, Defendant J.P. Elsenpeter told Plaintiff to request that the city of Pequot Lakes rezone the lot surrounding the building into two lots so that one could be sold separately.  (Am. Compl. ¶ 13).  Plaintiff undertook the necessary surveying and legal work for the subdivision at a cost of $1,200.  (Am. Compl. ¶ 13).  Pequot Lakes approved the division.  Id.

After the lot was divided, Plaintiff listed the lot for sale with a local realtor for $38,500 on January 3, 2008. (Am. Compl. ¶ 14; Am. Compl. Ex. F & G). In August 2008, J.P. Elsenpeter told Plaintiff that friends of Lakes State Bank would buy the newly subdivided lot. (Am. Compl. ¶ 15). This constituted the first offer on the property. (Cassioppi Dec. [Docket No. 119], Ex. H, O'Donnell depo. p. 98). The purchasers offered $31,500 for the lot. Id. According to Plaintiff, J.P. Elsenpeter represented that he could not get the buyers to pay anymore, so Plaintiff claims that he had no choice but to accept the officer. Id. Days after closing on the lot sale, according to the Amended Complaint, J.P. Elsenpeter told Plaintiff that he had worked with the buyers to build him a storage building on the subdivided lot to store his personal property. (Am. Compl. ¶ 20).

Buyers Chuck and John Holdings, Inc. paid for the property in cash on August 27, 2008 for $31,500. (Am. Compl. ¶16; Am.Compl. Ex. H, "Commercial Purchase Agreement"). The closing sheet listed closing costs of $19,345.07 with $16,556 required to pay property taxes to the county. Id. at Ex. I. The closing sheet also listed a check payable to the Defendant Lakes State Bank and Plaintiff for $12,238.79. Id. Plaintiff asserts that J.P. Elsenpeter told him that the $12,238.79 would be applied to the building loan, but the Defendant was still short of money to close the loan. (Am. Compl. ¶ 17). Thereafter, on October 30, 2008, Lakes State Bank increased the building loan from $303,700 to $318,000. Id. at Ex. K "Real Estate Mortgage"). Plaintiff further alleges that in the fall of 2008, Minnesota State Bank examiners "classified" all of Plaintiff's loans so that he could no longer increase his loans or change them around and take steps to keep his financial situation stable. (Am. Compl. ¶ 27).

On January 6, 2009, Lakes State Bank created a new, personal loan to Plaintiff in the amount of $10,050. Id. at Ex. L "Note, Disclosure, and Security Agreement." From the

personal loan, three payments were made on the new loan and the difference was given to Plaintiff.  (Am. Compl. ¶ 17).   Plaintiff contends that J.P. Elsenpeter used Plaintiff's camper as collateral for the $10,050 loan in direct contradiction to Plaintiff's instruction.  (Am. Compl. ¶ 18).  Plaintiff claims that J.P. Elsenpeter informed him that he had no choice but to sign the papers and used the $3,604.08 to encourage Plaintiff to sign since J.P. Elsenpeter knew Plaintiff needed funds.  (Am. Compl. ¶ 19).  Plaintiff maintains that no one explained to him what was done with the funds from this transaction namely the $31,500 from the land sale, the $6,345.92 personal loan, and the $14,300 increase in the building loan.  Id.

After the storage building was completed, Defendant J.P. Elsenpeter asked Plaintiff if he would have the City of Pequot Lakes rezone the building into a common interest community.  (Am. Compl. ¶ 22).  Plaintiff researched the issue and found that it would cost $6,000 to $7,000.  (Am. Compl. ¶ 23).  The Amended Complaint alleges that J.P. Elsenpeter agreed to personally pay for the cost of rezoning.  (Am. Compl. ¶¶ 23-24).  On June 18, 2009, the property was rezoned.  (Am. Compl. ¶ 24).  However, according to Plaintiff, J.P. Elsenpeter asked Plaintiff not to disclose that he had paid the expenses to Defendant David Elsenpeter.  (Am. Compl. ¶ 24).

In September 2009, Defendants J.P. Elsenpeter and David Elsenpeter proposed that Plaintiff sell the building to KCB Investments, LLC for $242,500.  (Am. Compl. ¶ 28).  In addition, Plaintiff asserts that Defendants J.P. Elsenpeter and David Elsenpeter asked that Plaintiff sign a note payable to Lakes State Bank in the amount of $75,000 with twenty three monthly payments of $934.70 and a lump sum of $65,597.36.  Id.  Plaintiff advised J.P. Elsenpeter that he could not make the payments and J.P. Elseneter responded that they would get a judgment against the Plaintiff.  Id.  Plaintiff backed out of the deal.  Id.

On September 9, 2009, Plaintiff received notice from the bank regarding its intent to foreclose on his properties. (Am. Compl. ¶ 29; Am. Compl. Exs. S & T "Notice of Default"). Plaintiff declared chapter 7 bankruptcy on September 18, 2009. Id. at Exs. S & T "Discharge of Debtor." Plaintiff claims that after his bankruptcy adjudication, J.P. Elsenpeter illegally withdrew $1,950 of personal funds out of Plaintiff's bank account and told Plaintiff he would not give the money back unless Plaintiff gave his vehicle to the Bank. (Am. Compl. ¶ 30). In January 2010, Plaintiff quit-claim deeded the building to the Bank.[1] (Am. Compl. ¶ 31; Am. Compl. Ex. U ").

After deeding the building to Lakes State Bank, the Plaintiff through online research learned that J.P. Elsenpeter was one of the original incorporators of Chuck & John Holdings, Inc. (the company who purchased the parcel of subdivided land from Plaintiff) and has been at various times its President, Treasurer and or Vice-President. (Am. Compl. ¶ 32).

On the basis of the above facts, Plaintiff alleges a single fraud claim against the Defendants arising out of the sale of the newly sub-divided lot to Chuck and John Holdings, Inc. Plaintiff seeks $346,000 in actual damages and $1,038,000 for mental anguish.

Presently before the Court are the Defendants' motion for summary judgment and the Plaintiff's motion for summary judgment. The Court considers each below.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   STANDARD OF REVIEW

Summary judgment is appropriate when the evidence demonstrates that there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A

---

[1] Plaintiff disputes Defendants' characterization of this transaction. He states that he did not agree to deed the property to the bank. (Pl's Mem., p. 7).

disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The admissible evidence is to be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chemical Products Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). The nonmoving party may not rest on mere allegations or denials in its pleadings but must set forth specific evidence-based facts showing the existence of a genuine issue for trial. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Fed. R. Civ. P. 56(c)(4) requires that affidavits supporting or opposing motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. University of Minnesota, 60 F.3d 423, 428–29 (8th Cir. 1995)[citing cases]. While a judge is not to weigh the evidence to

determine truth at the summary judgment stage, "a properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006). "Eighth Circuit law is clear that a naked self-serving affidavit, by itself, in the absence of any evidence in the record, is insufficient to create a genuine issue of material fact in dispute and accordingly is insufficient to defeat a motion for summary judgment." Harju v. Comrie, 2007 WL 1847248, at *6–7 (D. Minn. June 25, 2007).

### B.     DISCUSSION

Plaintiff's Amended Complaint alleges a single cause of action for fraud against the Defendants arising out of the failure to disclose that J.P. Elsenpeter was an owner of Chuck & John Holdings at the time that the Plaintiff sub-divided the lot surrounding a commercial building he then owned and sold the newly divided lot to Chuck & John Holdings, Inc. The Court construes Plaintiff's Amended Complaint as only bringing a fraud claim arising out of actions taking place arising out of Defendants' failure to disclose that J.P. Elsenpeter was an owner of Chuck & John Holdings, Inc., because Plaintiffs' Amended Complaint supports this interpretation.  Moreover, Plaintiff's own deposition testimony shows that his fraud claim does not arise out of any of his other dealings with the Defendants including: (1) Defendants' failure to help him find tenants for his property (O'Donnell Dep. [Docket No. 176], pp. 76-77);  or (2) Defendants' actions regarding a second property sold to him by Defendants not mentioned in the Complaint (O'Donnell Dep., pp. 102).

Under the common law of Minnesota, the elements of fraud are: (1) a false representation of a past or present material fact which was susceptible of knowledge; (2) the defendant knew the representation was false or made it without knowing whether it was true or false; (3) an intention to induce plaintiff to act in reliance on the misrepresentation; (4) the representation

caused the plaintiff to act in reliance thereon; and (5) the plaintiff suffered pecuniary damage as a result of the reliance. Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007) (quoting Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986)). An omission of a material fact constitutes fraudulent misrepresentation if "one party has special access to the facts and the other does not, or omitting the fact in question is misleading." Sit v. T & M Properties, 408 N.W.2d 182, 186 (Minn. Ct App. 1987) (citing Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 622 (Minn. 1972)).

The Plaintiff contends that Defendants knew that J.P. Elsenpeter was an owner of Chuck & John Holdings, Inc., when the corporation made an offer to purchase the Plaintiff's newly subdivided lot, but never disclosed this fact to the Plaintiff. Defendants contend they are entitled to summary judgment on Plaintiff's fraud claim because the Plaintiff cannot show that he relied on the mistaken belief that J.P. Elsenpeter was not an owner of Chuck & John Holdings when deciding to sell the newly sub-divided lot to that corporation.

In response to the Defendants' summary judgment motion, Plaintiff principally relies on what he broadly characterizes as Defendants' failure to adequately respond to discovery requests.[2]

However, the Plaintiff has had repeated opportunities to object to the sufficiency of the Defendants' discovery responses during the discovery period in this case, but he has never

---

[2] Plaintiff appears to be especially concerned with Defendants alleged failure to produce documents discussing Plaintiff's loans during board meetings which "[l]ogic would indicate that this preposterous." (Pl's Mem., p. 2). Apparently, Plaintiff believes that Defendants are hiding board minute meetings discussing his loans. Plaintiff also argues that the Defendants' responses to his discovery are "preposterous." Id. According to the Plaintiff, "[i]f no fraud occurred, then why not answer or provide documents?" Id. Plaintiff contends that the fact that a jury would wonder why from November 13, 2005 through May 21, 2009 no mention was made of the Plaintiff's loans or his alleged default. This, according to Plaintiff "is like telling this Court that no water flows over Niagara Falls." (Pl's Mem., p. 3). The Defendants respond to this argument by noting that they provided Plaintiff with 23 pages of bank board and committee minutes during discovery that reference loans made or guaranteed by Plaintiff. (Cassioppi Dec. [Docket No. 161], ¶ 3).

8

brought a timely motion to compel asserting any broad failure of the Defendants to respond adequately to the discovery requests as alleged here for the first time in his opposition to the Defendant's motion for summary judgment. Instead, Plaintiff's previous discovery motions all dealt with some alleged improperly redacted information and attempts to subpoena records from the FDIC and the Minnesota Department of Commerce. Moreover, to the extent that the Plaintiff is attempting to argue that Defendants' summary judgment motion should be postponed under Rule 56(d), under that rule, a party must file an affidavit which demonstrates specifically "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." Willmar Poultry Co. v. Morton–Norwich Prods., Inc., 520 F.2d 289, 297 (8th Cir. 1975). Here, Plaintiff has not identified any specific, relevant facts that might be revealed through additional discovery that would defeat summary judgment. See Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999) (stating that Rule 56(f), which was relabeled 56(d) in 2010, requires "the filing of an affidavit with the trial court showing what specific facts further discovery might unveil"). Rather, Plaintiff simply argues in a conclusory fashion that additional board meeting minutes and other documents should probably exist supporting his version of the facts surrounding his loans and his default thereon.

Extensive discovery has already been completed by both parties, and the Court has dealt with numerous discovery motions in this case. Plaintiff has had many opportunities to challenge the adequacy of the Defendants' general discovery responses overall if he felt it was necessary to obtain relevant information from the Defendant, but he has chosen to focus his pretrial motion practice largely on attempts to subpoena documents from the FDIC and the Minnesota Department of Commerce. The Plaintiff has not met his burden under Fed. R. Civ. P. 56(d) to

allow him time to conduct additional discovery. Therefore, additional time for discovery or postponement of the Defendants' motion for summary judgment is not warranted.[3]

The Court must conclude that the Plaintiff has not submitted admissible evidence or facts to demonstrate that a genuine issue of material fact exists as to the essential element of reliance which is a part of his fraud claim. "Essential to a finding of [intentional] misrepresentation are the elements of justifiable reliance and inducement." Vogt v. Carriage Hills Golf Club, 418 N.W.2d 536, 538 (Minn. Ct. App. 1988); see also Restatement (Second) of Torts § 537 cmt. a. ("If the recipient [of a fraudulent misrepresentation] does not in fact rely on the misrepresentation, the fact that he takes some action that would be consistent with his reliance on it and as a result suffers pecuniary loss, does not impose any liability upon the maker.").

Plaintiff's own sworn deposition testimony demonstrates that the relationship between J.P. Elsenpeter and Chuck & John Holdings, or lack of information thereof, did not affect his decision to sell the newly subdivided lot to Chuck & John Holdings. Plaintiff admitted that he would have sold the lot to Chuck & John Holdings even if it had been disclosed that J.P. Elsenpeter was an owner of the corporate entity. Specifically, Plaintiff stated:

> A    . . . . . J.P. could have come to me and said, I want to buy this lot myself, I want to build a pole barn, something to store my toys in, and I would have, but he had to go around --
>
> Q.   You would have said fine?
>
> A.   I would have said fine, let's -- how do we work it out? He kept saying that my loan with the bank would always be fine, would always be ok.
>
> Q.   So if J.P. had come to you and said I want to buy this lot and I want to buy it for thirty-one five, what would you have said?

---

[3] Additionally, given that Plaintiff's claim of fraud centers around his sale of a newly sub-divided lot to Chuck & John Holdings, Inc., as opposed to his other loan history, even assuming for the sake of argument that other board minutes did exist regarding his defaults on various loans, such documents would not be relevant and material to Plaintiff's only claim of fraud involving Chuck & John Holdings, Inc.

> A. Somehow we'd have worked that out because he would have said I'll work it out in the loan, but he didn't he --
>
> Q: I understand. So what you're saying is if he had been honest with you and he said I want to buy your lot for thirty-one five, you probably would have worked it out with him?
>
> A. Yep.

(Cassioppi Dec. [Docket No. 119], Ex. H, Plaintiff depo. tr. 104:25 – 105:19.)

Plaintiff argues in opposition to Defendant's motion for summary judgment, that the real estate agent who listed the divided lot for sale did not even know that J.P. Elsenpeter was an owner of Chuck & John Holdings, Inc. (Docket No 153, Ex. J, Pederson Letter). Plaintiff also asserts that the fact that J.P. Elsenpeter acquired a loan for $57,000 45 days after acquiring the lot "smells." (Pl's Mem., p. 4). Plaintiff maintains that it is irrelevant if Plaintiff would still have sold the lot to Chuck & John Holdings even if he knew that J.P. Elsenpeter was involved in the company is irrelevant because that was not what happened. However, these "mere allegations" and "denials" are not enough to defeat a motion for summary judgment. Forrest, 285 F.3d at 691. Instead, the Plaintiff must set forth specific evidence-based facts showing the existence of a genuine issue for trial. Id.

Plaintiff has not provided any admissible evidence demonstrating that he relied on the mistaken impression that J.P. Elsenpeter was not an owner of Chuck & John Holdings when he sold the subdivided lot. In fact, the only documents submitted by the Plaintiff in opposition to the Defendants' motion for summary judgment are discovery requests and this Court's prior discovery orders. None of these exhibits even arguably demonstrate that Plaintiff relied to his detriment on the lack of information regarding the relationship between J.P. Elsenpeter and Chuck & John Holdings when deciding to sell the newly sub-divided lot to Chuck & John

Holdings. Nor does the face of the Amended Complaint or exhibits attached thereto make any allegations suggesting reliance. The exhibits submitted in support of Plaintiff's Amended Complaint constitute loan documents, receipts for transactions, and letters. These documents only show that the alleged transactions occurred, but do not support Plaintiff's characterizations of the facts surrounding them or any alleged reliance on the Defendants' alleged omissions. In cases where a plaintiff fails to introduce affirmative evidence of reliance, like in the present case, a motion for summary judgment is properly granted. Bormann v. Applied Vision Sys., Inc., 800 F.Supp. 800, 811-12 (D. Minn. 1992).

Thus, even taking the record in the light most favorable to Plaintiff, it is devoid of any admissible evidence demonstrating that Plaintiff in fact relied to his detriment upon the alleged omission of information which would have highlighted to Plaintiff that J.P. Elsenpeter was an owner of Chuck & John Holdings, Inc. For these reasons, the Court recommends that the Defendants' motion for summary judgment be granted.[4]

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's sole argument in support of his motion for that summary judgment in this case is the assertion that Defendants have provided "100% non-responsive, evasive answers" to the Plaintiff's discovery requests. (Pl's Mot., p. 2). According to the Plaintiff when he requested copies of minutes from loan committee meetings of the bank's board, the Defendants arbitrarily supplied pages of meetings for November 13, 2008 and September 19, 2009. (Pl's Mot., p. 3). Moreover, Plaintiff contends that the Defendants improperly redacted certain materials. (Pl's

---

[4] Even if the Court did not grant the Defendants' motion for summary judgment in its entirety, it would nevertheless grant the motion as against Defendants David Elsenpeter, John C. Elsenpeter, Roger Schwieter, Gilroy G. Arvig, and Richard Tiedeman because no facts or allegations have been provided supporting a fraud claim against any of these Defendants. Plaintiff states that these Defendants were clearly involved in the transaction because they were listed as "persons with knowledge" in Defendants' Fed. R. Civ. P. 26(a)(1) initial disclosures. (Pl's Mem.,p. 8). However, there are no allegations against them in the Complaint and the record is completely bare of evidence that they were in any way involved with the fraud alleged by the Plaintiff arising out of the lot sale to Chuck & John Holdings, Inc.

Mot., p. 4). In support of his motion, Plaintiff submits copies of discovery responses and the redacted and unredacted pages.

### A. Timeliness of Motion

Defendants first argument opposing Plaintiff's motion is that the motion is untimely. On September 8, 2011, the Court set a dispositive motion deadline of October 15, 2011. (Docket No. 112). However, the Plaintiff did not file his motion for summary judgment until January 3, 2012. (Docket No. 167). Moreover, according to the Defendants, Plaintiff has not offered any good cause for his delay in filing his dispositive motion.

The Court will consider Plaintiff's pro se motion to be timely.

The Court did not issue a final Order regarding the Plaintiff's "Motion for Order" until October 21, 2011. (Docket No. 131). The Plaintiff's Motion for Order dealt with Plaintiff's serial efforts to obtain via subpoena certain records from the Minnesota Department of Commerce and FDIC which the Plaintiff contended would help support his claim. Plaintiff mistakenly appealed the undersigned's decision denying the Motion for Order initially to the Eighth Circuit Court of Appeals on November 29, 2011 (Docket No. 147), and subsequently, to the district court on December 19, 2011 (Docket No. 154). Therefore, considering the pending appeal and subsequently renewed objection as well as the Plaintiff's status of a pro se litigant, the Court will consider his motion to be timely. See Grover-Tsimi v. Millpond Partners, 2010 WL 4979092, at *2 (D. Minn. Oct. 18, 2010)(" [t]he Court [also] recognizes that Plaintiff[s are] proceeding pro se and that such litigants are usually entitled to a certain leeway in compliance with the applicable rules.").

### B. Merits

Plaintiff contends that the information provided by the Defendants in response to his request were useless. Plaintiff also argues that the Defendants lied in their depositions, but that if they are in front of the jury, "someone of the six (6) will fess-up!" (Pl's Mem., p. 2). Plaintiff also takes issue with the summary judgment standard used in Defendants' memo and states that the Defendants are merely manipulating their response to argue for their own motion for summary judgment. (Pl's Mem., p. 3).

Defendants characterize Plaintiff's motion as one seeking a discovery sanction under Fed. R. Civ. P. 37(b)(2)(A)(vi) which allows the Court to enter default judgment against a party that disobeys an order to provide discovery. (Def.'s Mem., p. 3). Defendants contend that because they have complied with all the Court's prior discovery orders, such a sanction is not appropriate. Id. Additionally, Defendants note that the deadline for discovery passed, and that even if a motion for summary judgment might be timely, Plaintiff can no longer bring a timely motion seeking discovery. Id. at 4.

Plaintiff does not state in his motion papers under which of the Federal Rules of Civil Procedure he bases his present motion, but given the arguments made by the Plaintiff, the Court can only construe his motion as one for a Rule 37 default judgment. Rule 37 "grants a district court wide discretion to impose sanctions for a party's failure to comply with discovery requests." United States v. Big D Enterprises, Inc., 184 F.3d 924, 936 (8th Cir. 1999). "Federal Rule of Civil Procedure 37(d) allows the district court to, among other sanctions, dismiss an action if a party 'fails to appear' for his or her deposition" or "fails to serve its answers, objections, or written response" to the opposing party's written discovery. Aziz v. Wright, 34 F.3d 587, 589 (8th Cir. 1994)(citation omitted); Fed. R. Civ. Pro. 37(d)(1)(A). Similarly, Fed. R. Civ. P. 37(b)(2) allows the Court to enter a default judgment if a party fails to obey an order to

14

provide discovery. Courts rarely dismiss a case for discovery violations because the "sanction of dismissal is among the harshest of sanctions, and '[t]here is a strong policy favoring a trial on the merits and against depriving a party of his day in court.' " Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co., 559 F.3d 888, 899 (8th Cir. 2009). However, to justify dismissal under Rule 37, there must be: (1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party. Id.

Initially, the Court notes that there has been no showing whatsoever that the Defendants have failed to comply with the Court's previous discovery Orders.

As to the sufficiency of the Defendants' discovery responses, Plaintiff points to nine areas generally which he claims demonstrate insufficient discovery responses including allegedly deficient responses to interrogatories and documents requests. The Court finds Plaintiff's arguments to be unpersuasive. Plaintiff has not provided any specific reason as to why Defendants' responses to document requests and interrogatories are insufficient. Instead, in violation of LR 37.2, Plaintiff has simply attached all the raw discovery documents to his motion with the apparent expectation that the Court will wade through the discovery in order to determine whether Defendants' discovery responses are sufficient. Moreover, as already discussed in section II.B above, the Court has already heard numerous motions by Plaintiff regarding discovery in this case, and, with the exception of Plaintiff's motion regarding certain redacted documents (which the Court granted and with which Defendants complied), the Plaintiff has never before argued that the Defendants' discovery responses as a whole were universally deficient.

The Court has never before been presented with a timely motion challenging the overall sufficiency of the Defendants' discovery responses, and the Defendants have complied with the

Court's prior sole order on the one, limited discovery motion by Plaintiff that was directed toward Defendants. The other discovery motions by the Plaintiff were directed to non-parties who had been the subject of Plaintiff's attempts to subpoena documents. Plaintiff argues that the Defendants failed to comply with the Court's April 6, 2011 Order (Docket No. 88) dealing with redactions of minutes from bank board meetings. Plaintiff characterizes this order as requiring Defendants to provide unredacted versions of all meeting minutes. However, that Order specifically stated that:

> The Court directs Mr. Cassioppi, the Defendants' attorney to provide a privilege log to the Plaintiff which will tell the Plaintiff generally what each of the redacted information pertains to it and why it is privileged or otherwise confidential. The privilege log shall be made available to the Plaintiff within seven days of the issuance of this order. Further, the Court directs Defendants to remove any redactions of information that relates to Plaintiff's loan at issue in the present case unless a proper objection exists for not providing the information.

(Order, p. 8). Defendants complied with this order and provided a privilege log to the Plaintiff. The privilege log shows that no reference to Plaintiff or the subject property was made in the portions of the meeting minutes which were redacted and details the specifics of the redacted information. Defendants' attorney represented on the record that the redacted portions of the bank meeting minutes did not mention the Plaintiff. Thus, the Defendants provided Plaintiff with all the meeting minutes in their possession that mentioned the Plaintiff and fully complied with this Court's previous order.[5]

---

[5] At the hearing regarding the present motion, the Plaintiff kept referring to alleged documents which the Defendants redacted. However, during the hearing, it was apparent that the Plaintiff was pointing to "Unredacted Exhibit A" to his motion, i.e., the privilege log itself, as the redacted document. However, the privilege log simply explains what portions of the meeting minutes the Defendants redacted and describes the nature of the redacted information, The privilege log does not constitute the meeting minutes themselves. In fact, the record shows that the Defendants have produced in unredacted form all meeting minutes relating to the Plaintiff.

Plaintiff apparently believes that additional meeting minutes mentioning his loan probably exist because he was in default on various loans. According to Plaintiff, it is his belief that loans in default are regularly discussed at bank board meetings. Nevertheless, whether and when Plaintiff's loan entered default and began to be foreclosed upon is irrelevant to the case at hand. What is relevant here is the alleged fraud at the time of the sale to Chuck &

16

Based on the record now before this Court, there has been no showing of discovery abuses or failure by Defendants which would support entering a default judgment as a sanction against them in this case. The Court, therefore, necessarily recommends denying Plaintiff's motion for summary judgment.

## VI. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that

1. Defendants' Motion for Summary Judgment [Docket No. 116] be GRANTED; and

2. Plaintiff's Motion for Summary Judgment [Docket No. 167] be DENIED.


Dated: March 21, 2012                         s/Leo I. Brisbois
                                              LEO I. BRISBOIS
                                              United States Magistrate Judge

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 4, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and

---

John Holdings, Inc. of the newly sub-divided lot which occurred well before Plaintiff's loan for the original purchase of the property entered default.

Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.